230    APPELLATE COURTS OF ILLINOIS.

VOL. 69.]    Missionary Society of the M. E. Church v. Cadwell.

---

## Missionary Society of the M. E. Church v. Adison Cadwell et al., Executors.

1. WILLS—*Construction of, Mistake in the Name of a Legatee.*—A mistake in the name or description of a legatee, whether an individual or corporation, will not render a bequest void if the name and description used in the will, as applied to the facts and circumstances, will

identify such person or corporation from others, and whenever parol evidence becomes necessary to remove such uncertainty the court may inquire into any material facts relating to the person who claims under the will, for the purpose of identifying the person intended.

2. SAME—*Parol Evidence Admissible to Identify Legatee.*—Where a legatee is named in a will, and there is no legatee of that exact name, parol evidence is admissible to show what person or society was intended by the testator.

3. MISNOMER.—*In Name of a Legatee.*—A misnomer in a will, designating the organization intended to be benefited by a legacy will not defeat the bequest if it can be reasonably shown what society in fact was contemplated by the testator.

**Bill for the Construction of a Will.**—Appeal from the Circuit Court of Pike County; the Hon. JEFFERSON ORR, Judge presiding. Heard in this court at the May term, 1896. Reversed and remanded, with directions. Opinion filed December 4, 1896.

A. G. CRAWFORD, attorney for appellant.

A. C. BENTLEY, attorney for appellee.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

This was a bill in chancery filed by the executors of Lucy Williams, deceased, to obtain a construction of her last will. The clause now to be considered made a bequest of $1,500 to "The Home Missionary Society of the M. E. Church," but as there was no society or corporation organized under that precise name, and as two organizations, to wit: "The Missionary Society of the M. E. Church" and "The Woman's Home Missionary Society of the M. E. Church," were each claiming to have been intended by the the testatrix, the executors sought the direction of the court of chancery in that behalf. These claimants were made parties, and after a full hearing the court entered a decree finding that "The Woman's Home Missionary Society of the M. E. Church" was the organization intended in the will. "The Missionary Society of the M. E. Church" brings the record here and asks a reversal of the decree.

It appears from the evidence that the testatrix, a maiden lady of considerable estate, had for many years been a mem-

282        APPELLATE COURTS OF ILLINOIS.

VOL. 69.]   Missionary Society of the M. E. Church v. Cadwell.

ber of the Methodist Episcopal Church at Pittsfield, Illinois; that she took a very active interest in its work, was zealous and liberal and well versed in all matters pertaining to the affairs of the church in general.

It also appears that in connection with and under the auspicies of that church there are three missionary societies— one known as " The Missionary Society of the M. E. Church," one known as " The Woman's Foreign Missionary Society of the M. E. Church," and one known as " The Woman's Home Missionary Society of the M. E. Church."

The first named is the general missionary organization of the church. In its charter granted by the State of New York it is declared :

" The objects of said organization are charitable and religious. It is designed to diffuse more generally the blessings of education and Christianity and to promote and support missionary schools and Christian missions throughout the United States, and Territories, and also in foreign countries." It is managed by a board composed of ministers and laymen according to rules and regulations prescribed by the general conference of the M. E. Church. Its scope is general both as to the field of operations and as to the subjects of its consideration. About fifty-five per cent of its funds are expended abroad and about forty-five at home. The second has for its object the more successful prosecution of the missionary work of the church among women in foreign lands. The general purpose of the third is to enlist and organize the efforts of Christian women in behalf of the needy and destitute women and children of all sections of this country without distinction of race and to co-operate with other societies of the church in educational and missionary work. It has authority to collect and disburse money, employ missionaries, and to work among such neglected population in the home field.

The testatrix was a person of unusual intelligence and energy, and very familiar with the missionary operations of the church. She was never connected with either of these societies, and, as some of the witnesses think, was not very

much in favor of "women's movements in the church seperate from the general work of the church," and it appears that though there was a branch of The Woman's Home Missionary Society organized in the town where she lived she did not belong to it, nor contribute to it, though always giving liberally to the general missionary society of the church. The latter society as already stated was devoted to foreign as well as domestic missions, and while it had no separate departments for these missions it used approximately a certain per cent of its funds for each, and, as the testimony shows, where a gift or devise is made specially for home or foreign purposes, it will be applied according to the wish of the donor. If a gift is without limitation the money will be placed in the treasury and used as other funds, under the direction of the board, for both home and foreign missions in about the proportions stated.

There is evidence that the testatrix was not favorable to foreign mission work, and never belonged to the woman's foreign missionary society; and on the other hand that she did belong to it for a short time some eighteen years before her death.

It appears that in the early history of the church in her town the general missionary society, at her solicitation, rendered some pecuniary aid which was much needed, and which she then, and ever after, seemed to appreciate fully, and that she often expressed herself to that effect—that her brother, who died several years before she made her will, entertained similar feelings and requested her to remember the missionary society of the church liberally, and that in referring to this request on one occasion she said she intended to do so.

As already stated, it appears that she always did give liberally to that society while she lived.

There is testimony to the effect that among members of the church that society was usually known as "The Missionary Society," and very often was spoken of as the "Parent Board," and that "The Woman's Home Missionary Society" was usually designated as The Home Missionary

284    APPELLATE COURTS OF ILLINOIS.

VOL. 69.] Missionary Society of the M. E. Church v. Cadwell.

Society; though it is quite apparent that such testimony seems to be very largely a reflex of the habit and idea of the witness, rather than a statement of any general or invariable custom or understanding among Methodists in the use or precise meaning of these designations.

Very probably if in the same discourse there was reference to "The Missionary Society," and also to "The Home Missionary Society," the speaker would have intended (and the audience would have understood) "The Missionary Society of the M. E. Church," and "The Woman's Missionary Society of the M. E. Church," and probably the same would have been the case in an ordinary conversation where both societies were so referred to.

In Missionary Society v. Mead et al., 131 Ill., page 361, it is said that a mistake in the name or description of a legatee, whether an individual or corporation, will never render a bequest void if the name and description used in the will, as applied to the facts and circumstances proved, will identify such person or corporation from others; and that whenever parol evidence becomes necessary to remove such uncertainty the court may inquire into any material fact relating to the person who claims under the will, to the property claimed as the subject of disposition, to the circumstances of the testator and his family and affairs, for the purpose of enabling the court to identify the person intended by the testator—that the law is not so unreasonable as to deny to the reader of an instrument the same light which the writer enjoyed, and that the court should, by means of extrinsic evidence, place itself in the situation of the testator, whose language it is called upon to declare.

. The court further remarks:

"Under this rule, it was unquestionably competent for these various claimants to prove their corporate existence and the objects and purposes for which they were organized; the knowledge, if any, which testatrix had of them, and her feelings toward and relations with them; the name or names by which she or others were accustomed to designate them; that no other corporations, associations or societies

corresponding to the name or description given in the will existed at the time it was executed; her family, church and social relations; in short, every fact and circumstance surrounding her and these claimants, which would aid the court in reaching a conclusion as to her motives and purposes in using the names or description in question."

After referring to a number of adjudged cases illustrating the view expressed, the court quoted from Hinckley v. Thatcher, 139 Mass. 477, as follows :

" The facts known to the testator at the time he executed his will, the names by which he was accustomed to call the missionary societies, or by which they were usually called and known in the religious society with which he worshiped, the interest shown by him in any particular missionary society, and the contributions, if any, that he made for missionary purposes, are competent evidence to aid in identifying the missionary societies intended by the will."

The bequest is to " The Home Missionary Society of the M. E. Church." The word *Home* being omitted the name of appellant would remain. The word *Woman's* being interpolated would give us the name of appellee claimant.

Manifestly the gift was intended for one of these claimants.

The appellant is, as already stated, the general missionary agency of the church. It is designed to diffuse more generally the blessings of education and Christianity, and to promote and support missionary schools and Christian missions throughout the United States and Territories, and also in foreign countries. It is not restricted as to the objects or locality of its benefactions, and is the main instrumentality through which these functions of the church are performed.

It derives a large part of its funds from contributions regularly taken up in the various charges, and those funds are disbursed by the board in nearly equal proportions for domestic and foreign missions—though a contribution will be used exclusively for either as may be desired by the donor.

The appellee claimant has a limited field and object. Its main dependence is upon the efforts of Christian women, and

286        APPELLATE COURTS OF ILLINOIS.

VOL. 69.] Missionary Society of the M. E. Church v. Cadwell.

its great charity is in behalf of needy and destitute women and children in this country.

The one is general, embracing all the appropriate means by which religious and educational advantages may be secured to all people in this and foreign lands, the other is specially intended to aid needy and destitute women and children in the home field.

The testatrix, with her intelligent knowledge of the customs and methods of the church, seemed to have a broad view of what was most useful and practical in working out its great purposes.

She thought the home missionary work was most fruitful of good results when directed to the support and building up of weak and struggling charges, such as was that of her own town years ago, as already stated—she was especially interested in such efforts. She did not feel so much interest in foreign missions; nor did she contribute to the appellee claimant in its home mission work but declined to do so, though giving freely at all times to the appellant, and this, as we may fairly presume, because in her judgment one was more practically useful than the other. Evidently that was her idea. She knew that if she gave to the appellant for home use the gift would be devoted to those forms of mission work which she preferred, and if she gave to the appellee claimant it would be devoted to special objects, and through special efforts which she had not preferred.

Counsel for appellee say she had more than ordinary business ability; that she looked after her affairs herself, and that she wrote the will with her own hand.

We do not find any proof of this latter statement in the abstract. The instrument is quite aptly drawn, yet it is a little singular that she should have failed to designate more accurately the beneficiary intended in this bequest. In one other instance she was also at fault; that is in giving a sum to the University of Bloomington, Illinois, there being no institution of that name, but as was alleged in the bill, this was designed for an institution of learning under the aus-

pices of her church at Bloomington, known as "The Illinois Wesleyan University." Perhaps and probably this was characteristic of her, as it is of many persons having enlarged ideas with an active, executive disposition, who are not careful or particular as to merely technical details. She knew well enough there was no organization bearing the precise name mentioned in this bequest, and yet it did not occur to her that there would be any doubt as to the beneficiary intended.

The whole matter being considered, we feel reasonably certain that she meant to give her money to the home missionary cause of her church, in the broadest sense, as she had always done, to be used and expended through the main, general, and most efficient agency of the church. for such purposes, and that it was not her design to give it to the "Woman's Home Missionary Society."

It is not to be supposed that because she was a woman she would favor by her will that organization. On the contrary, she never seemed so inclined, and, as is well known, many women of the highest intelligence and the best judgment do not choose to co-operate with organizations controlled exclusively by or in the interest of women.

Nothing can fairly be drawn from this consideration one way or the other except so far as it may be affected by evidence bearing directly upon it. We are persuaded that she considered her bequest effective, and that she so intended it in favor of the general missionary society of the church, for use in the home field, and that the word *Home* was employed merely for the purpose of designating where the money was to be applied. This was the only word of limitation that she used.

If we interpolate the word *Woman's*, as urged by appellee claimant, we must add another limitation and thus effectuate an object which she in her life did not appear to regard with much interest, though it was often pressed upon her notice by those who were promoting it.

She was a person of mature and settled views, and it is not likely that at the close of a long, active and consistent life, when making a final disposition of her estate, mainly to

charitable objects, she would depart from a course she had usually pursued or abandon ideas that she had always entertained.

We are of opinion the decree erroneously construed the will in regard to the bequest under consideration. It will therefore be reversed, with direction to enter a decree to the effect that the bequest was intended for The Missionary Society of the M. E. Church, for use and application in the United States and Territories.

Reversed and remanded with directions.