SECOND UNITED PRESBYTERIAN CHURCH, PAWNEE CITY, NEBRASKA, APPELLANT, V. FIRST UNITED PRESBYTERIAN CHURCH, PAWNEE CITY, NEBRASKA, ET AL., APPELLEES.

FILED APRIL 7, 1904.   No. 13,534.

1. **Wills:** CONSTRUCTION. The mere misnomer of a legatee or devisee does not render the gift void, if, from the context of the will or proof *dehors* the instrument, it can be ascertained who was actually intended.

2. ———: MISNOMER. Where one claiming as devisee under a will is not designated therein by his proper name, he may show that he is also known by the name used in the will to designate the devisee, although the name of another claimant exactly corresponds to the name thus used.

3. ———: AMBIGUITY. In such case there arises a latent ambiguity, which may be removed by evidence of circumstances tending to show which of the two claimants the testator intended as the object of his bounty.

4. **Evidence.** Evidence examined, and *held* sufficient to sustain the decree of the district court.

APPEAL from the district court for Greeley county: JOHN R. THOMPSON, JUDGE. *Affirmed.*

*J. W. Deweese, F. E. Bishop, George W. Scott* and *S. J. Graham,* for appellant.

*Lindsay & Raper* and *James R. Hanna, contra.*

ALBERT, C.

In 1870, a religious body was organized in Pawnee City, under the corporate name of the United Presbyterian

Church of Pawnee City, Nebraska. It is claimed on the one hand, and denied on the other, that the corporate name was changed, in 1881, to the First United Presbyterian Church, etc. In 1887, another religious body was organized in the same city, under the corporate name of the Second Presbyterian Church of Pawnee City, Nebraska. Ecclesiastically, as well as legally, the two organizations were entirely independent of each other, save that they were within the jurisdiction of the same presbytery and synod of the denomination known as the United Presbyterian Church of North America to which they belonged. They will be referred to hereafter as the first and second church, respectively.

David Remick resided in that city from 1870 to 1880, and retained business interests therein and made frequent visits thereto until his death. He died testate in 1901, in the state of California, and his will was duly probated. The devise which gave rise to the present litigation is as follows:

"I will to the United Presbyterian Church of Pawnee City, Nebraska, the following described land in Greeley county, Nebraska, to be managed and expended in a way the trustees of said church may deem best for the welfare of said church." (Here follows a description of the land.)

After the probate of the will, the trustees of the first church conveyed the land in question to the Pawnee City Academy, which is an educational institution of the same denomination. Afterwards, the second church began this action against the Pawnee City Academy and others in the district court for Greeley county, claiming that under said devise it took title to one-half the land mentioned therein, and asked to have its title thereto confirmed. The first church intervened, was made a party defendant, and filed its answer asserting ownership of the land under the will. The court found against the plaintiff and in favor of the intervener. The plaintiff brings the case here on appeal. The controversy here is exclusively between the first and second churches.

It is claimed on behalf of the second church, that the first church, having changed its name before the will was made, from the United Presbyterian Church to the First United Presbyterian Church, does not bear the name used in the will to designate the devisee, but that the two churches, taken together, constitute a corporate ecclesiastical entity, which corresponds to the name used by the testator to designate the devisee, and that the devise, therefore, goes to such entity, to be apportioned between two congregations constituting the first and second churches.

There is considerable doubt arising from the evidence, whether a change in the corporate name of the first church was legally effected, but it does not appear to be necessary to go into that question; because, whatever steps may have been taken to that end, it is clear that, after such steps were taken, and down to the time of the trial of this case in the district court, the first church continued to be known by the name of the United Presbyterian Church of Pawnee City, Nebraska, under which it was organized, although it was also known by the other name. In 1883, it erected a large church edifice, which was paid for, in part at least, by subscriptions from its members and the public generally. A number of these subscriptions were reduced to notes as late as 1884 and 1885. One of the subscription papers and a number of the notes are in evidence, and in each instance the church is designated by its original name. In 1884, a contract was made for furniture for the new church edifice, and a mortgage for $5,000 given on the church property. In both of these instruments, as well as in the note for the security of which the mortgage was given, the church is described as the United Presbyterian church. The same is true of a policy of insurance on the church property, issued in 1889. As late as 1887, it appears to have been referred to by one of the newspapers of Pawnee City by its old name. Another significant fact bearing on this point is that, from 1870 down to the present time, the accounts of the church of

its different funds, in the several banks of Pawnee City, were kept in the name of the United Presbyterian Church of Pawnee City, Nebraska. The testator was president of one of these banks for a number of years immediately preceding his death. It will not be claimed, we think, that it is necessary, in order to sustain a devise to the first church, that it should be designated in the will by the precise name it had adopted.

The rule is thus stated in Schouler, Wills (3d ed.), sec. 583:

"The mere misnomer of a legatee or devisee does not render the gift void, if from the context of the will or proof of the admissible sort *dehors* the instrument it can be ascertained who was actually intended. Persons designated by their nicknames, too, or by words of misdescription originating in some nickname, or by their popular names, or by some familiar term of endearment, may also be identified. So, too, may a name assumed or gained by reputation, though not strictly appropriate, amount to a sufficient description of the person intended. Nor need a legatee be expressly named at all if oral proof of identity serves to connect him with the gift which the will expresses."

The doctrine of the text is familiar, and is supported by a long list of authorities. Assuming, as claimed on behalf of the second church, that the two churches taken together constitute a corporate ecclesiastical entity, corresponding to the name used in the devise and capable of taking thereunder, the most favorable view that can be taken, with respect to the claim of the second church, is that there are two bodies answering to the name used by the testator to designate the object of his bounty, namely, the first church and the "corporate ecclesiastical entity" consisting of the first and second churches. This gives rise to a latent ambiguity. It is elementary that an ambiguity of this character may be removed by any evidence, either of circumstances or declarations of the testator, tending to show which of the two persons answering to the description the testator had in mind when the will was made. Schouler,

Wills (3d ed.), sec. 573. The rule is illustrated and applied in numerous cases collected in 2 Am. & Eng. Ency. Law (2d ed.), 298.

The only question then is, whether the testator, by the use of the name, the United Presbyterian Church of Pawnee City, Nebraska, intended the first church, or had in mind a body consisting of both the first and second churches. The evidence on this point is quite voluminous, and we shall notice only what seems to us to bear most strongly on the question. It sufficiently appears that, during the residence of the testator in Pawnee City, four church organizations were maintained there: (1) The United Presbyterian Church; (2) the First Presbyterian Church; (3) the First Baptist Church, and (4) the First Methodist Church. He was not a member of any of them, but the evidence shows a decided preference on his part for the first. During his residence there, that church was presided over by the Rev. R. J. McCready, whose pastorate continued up to the trial of this case. The testator appears to have held him in high esteem; and between the two men there existed a strong bond of friendship, which was broken only by the death of the former. During his residence in Pawnee City, the testator usually attended the first church, and his daughter was a teacher in its Sunday school. After his removal, on each subsequent return, he visited the Rev. McCready, or the latter, alone or with his family, visited him. The last of these visits appears to have been in 1898 or 1899, and on this occasion the testator made inquiries of the pastor in regard to the church over which he presided, as well as in regard to the other organizations which were in existence during his residence in that place. It does not appear that he made any inquiry in regard to any other church organization, although there were three others at that time. It also sufficiently appears that, after his removal from Pawnee City, he expressed an intention to help the Rev. McCready's church or congregation. In addition to the devise hereinbefore mentioned, the testator made provision by will for

the First Presbyterian Church, the First Baptist Church and the First Methodist Church, all of Pawnee City. The evidence tends to show grounds for a special interest in each of the three churches just mentioned. They were in existence during his residence in that city. His first wife was a member of one of them; his second wife of another, and a nephew, in whom he took unusual interest and to whom he left a considerable portion of his property, was a member of the third. It was these three churches, and the one presided over by the Rev. McCready, of which he made special inquiry on the occasion of his last visit to Pawnee City, and the names by which these four churches were known and designated during his residence there correspond exactly with the names used in the will to designate the objects of his bounty. Three other churches were organized after his removal from Pawnee City, one of which is what we have heretofore referred to as the second church and the plaintiff in this case. None of them are specifically mentioned in the will, nor any of them referred to in any way, unless it should be held that the second church is included in the devise under consideration. It also appears in evidence that the second church was organized as a result of some difference between the members of the first church, the dissatisfied members withdrawing and organizing the second church. The evidence shows that the testator was aware of this division, and disapproved of the organization of the second church. There is nothing in the record to show that he ever expressed any intention to assist it, or that he took any special interest in it, save that on one occasion he attended one of its services. Taking into account all the circumstances—the interest the testator manifested in the first church, the strong friendship that existed between him and the reverend gentleman who was its pastor for so many years, that the first church and the three other churches in Pawnee City mentioned in the will were associated in his mind with his life and business career in Pawnee City—the evidence seems amply sufficient, if not

conclusive, that the testator, in the use of the name, the United Presbyterian Church of Pawnee City, Nebraska, had in mind the first church and no other.

Our attention is called to another provision of the will, whereby certain property was left "to the trustees of the United Presbyterian Church of Hepburn, Page county, Iowa, for the benefit of such church (said church now being presided over by Rev. D. Dodds) and to the trustees of the United Presbyterian Church, in Page county, Iowa, to be disposed of as the trustees of said church think best for the benefit of said church." The evidence shows that the United Presbyterian denomination had six or seven congregations or churches in Page county, Iowa, at the time the will was made, one of which was presided over by Rev. D. Dodds. It is argued that as the testator was so specific in his description of the church in Hepburn, going to the extent of naming its pastor, he would have been equally specific in designating the first church in the devise under consideration, had he intended it as the devisee. That simply goes to the sufficiency of the evidence to sustain a finding that the first church was the object the testator had in mind when he used the name, the United Presbyterian Church, etc.; and, to our minds, it is wholly insufficient to rebut the inference to be drawn from the facts hereinbefore stated. It is not unusual for a person to exercise the greatest precaution, or to express himself with the highest degree of accuracy up to a certain point, and then relax his vigilance. It is not always easy for the person himself to explain how this happens. In the present instance, it is probable that, when the testator called to mind the intended objects of his bounty, the names by which he had known the churches in Pawnee City during his residence there came to him with all the strength of early impressions, leaving no room for doubt, in his mind, as to the exact names by which they should be designated in the will.

We are thoroughly satisfied that the decree of the district court is in accordance with the intention of the tes-

tator, which, after all, is the chief thing to be considered in determining the construction to be put on a will. It is therefore recommended that the decree of the district court be affirmed.

FAWCETT and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.