IN RE ESTATE OF ·LOIS G. STUART.

GERMAN EVANGELICAL PEACE ASSOCIATION, Appellant, v.
W. A. ARNOLD et al., Appellees.

WILLS: Construction—Extrinsic Evidence. Extrinsic evidence is
1    admissible to identify an indefinitely described legatee. So held
as to conflicting church claimants.

APPEAL AND ERROR: Questions of Fact, Etc.—Identity of Lega-
2    tee. Wholly unsupported findings by the trial court in a law
action will be set aside on appeal. So held as to the identity
of a legatee under a will.

*Appeal from Audubon District Court.*—E. B. WOODRUFF,
Judge.

SEPTEMBER.·17, 1918.

MRS. Lois G. Stuart, a resident of Audubon, Iowa, died testate. Among.the bequests provided for in her will was one of $1,000 to the "Trustees of the German Lutheran Church of Audubon, Iowa, in trust, to be expended by said board for the use and benefit of said church." Claiming the benefit of this gift there appeared two church organiza-.

tions, one of which bears the official or corporate name of "The German Evangelical Peace Association of Audubon, Iowa," while the official or corporate name of the other is "The German Evangelical Lutheran St. John's Church of Audubon, Iowa." There was a trial to the court, which found that the St. John's church is the beneficiary intended by the testatrix to receive her bequest, and the Evangelical Peace Association appeals. The executors take no part in the controversy, except to express their readiness to pay over the fund to the church which established its identity as legatee, to the satisfaction of the court.—*Reversed and remanded.*

*Mantz & White,* for appellant.

*Graham & Graham* and *S. C. Kerberg,* for appellees.

WEAVER, J.—With but little dispute, the testimony develops the following facts: Lois G. Stuart, the testatrix, died December 2, 1913. Her will, which has been duly probated, was executed in September, 1911. She was possessed of a considerable estate, was an old resident of Audubon, and, though herself a member of the Presbyterian Church, was a liberal supporter of religious work generally. Among the legacies provided in her will were five of $1,000 each, for the benefit of "The Board of Trustees of the Presbyterian Church of Audubon," "The Board of Trustees of the Methodist Episcopal Church of Audubon," "The Board of Trustees of the Christian Church of Audubon," "The Board of Trustees of the Evangelical Church of Audubon," "The Board of Trustees of the German Lutheran Church of Audubon." During the twenty years preceding her death, she had made at least three wills, including the one admitted to probate, and each of these wills contained the same or similar bequests for the churches above named. The church organization known in the title to this case as

1. WILLS: construction: extrinsic evidence.

The German Evangelical Peace Association (which, for the sake of brevity, will hereinafter be spoken of as the German Evangelical Church) was organized in Audubon some time prior to 1891, but did not become incorporated until the year 1911. In the year 1891, this organization erected a church building in the neighborhood of Mrs. Stuart's home, and she contributed to the fund raised for that purpose. The several Protestant churches then existent appear to have united in the dedication services. The topic of the principal sermon preached was, "The Reformer, Martin Luther." Another sermon on the same occasion was preached by the pastor of the Presbyterian church, on Martin Luther and his work. Services of the German Evangelical Church have been maintained in this building down to the present time, though part, or perhaps most, of the time it has had no resident pastor, the charge of the work being committed to a minister resident elsewhere. The church entitled The German Evangelical Lutheran St. John's Church (hereinafter spoken of as the St. John's) appears to have had no organized existence in the town of Audubon until the year 1913 or 1914. For a period of ten years or more prior to that date, a church known as "The Evangelical Trinity Lutheran Church of Lincoln Township" had been maintained at a point about ten miles distant from Audubon. This organization had a resident pastor, under whose leadership there was more or less effort to establish and maintain religious services in town as a branch of the work of the church at Lincoln. Meetings were sometimes held in a schoolhouse, at other times in the courthouse, on two occasions in the church building of the appellant, and later in another building, known then as the Baptist Church, and now as the Danish Lutheran Church. The Lincoln pastor under whom the work was begun died about 1906, and, for a period of several years prior to the death of Mrs. Stuart, the services at the Audubon branch of the

Lincoln church appear to have languished, if not to have been entirely suspended. This dormant condition continued until in September, 1913, when, at the request of several persons of his religious faith, the Rev. Mr. Starck, pastor of the Lincoln Church, began to preach at Audubon, and he has since held regular meetings there for his people in the Danish Church. As a witness, he says:

"We organized the very first thing; that was done at the first service we held here at the Evangelical Church. At the first service we held in this church, we elected officers. The officers were elected by the congregation."

This is the first tangible evidence of the independent organization of the St. John's Church. There is also evidence tending to show that such organization was not perfected until the spring of the following year, and after the death of the testatrix.

As near as we can make out from the not very clear explanation of the preacher witnesses, the general organization known as "The German Evangelical Association of Peace" and the one known as "The German Evangelical Lutheran" both profess to be Lutheran, in the sense that they both adhere to the Lutheran faith and practice as they understand it, though one accepts the authority of what is called the "Augsberg Confession," and the other, the "Heidelburg Confession." Of the theological differences and distinctions thus arising, we shall not attempt to speak with precision. It is sufficient to say that both lay claim to loyalty to the truth as proclaimed by Martin Luther; both make use of Luther's Catechism; both have incorporated into their distinctive names the word "Evangelical;" and both prefix to their titles the word "German." The divergence between these churches seems to be a perpetuation of the division of the Lutheran Church many years ago in Germany, the country of its origin, over questions pertaining to the sacraments, since which the one faction has retained the more distinctive title of "Lutheran," while

the other is better known as the "Reformed" Church. Neither, however, yields to the other in its claims to be Lutheran in faith and practice. These things, with the fact that the appellant was the first to enter the Audubon field, and first to erect a church building and take its place among the religious societies of the town, and at the dedication of its church publicly recognized the leadership of Martin Luther in matters of religious faith, made it very easy for the English-speaking portion of the people, little versed in such distinctions, to speak of and come to know the appellant as "The German Lutheran Church." That such was the case, the testimony shows beyond all reasonable doubt. It was so spoken of in ordinary conversation. In their local items and notices of church services, the two newspapers of the town habitually spoke of the appellant church as the "German Lutheran." The business and professional men of the town, and other persons taking active interest in church and social affairs, seem to have taken it for granted that such was its appropriate and proper appellation, and never knew the difference, until this controversy arose. The testatrix herself spoke of it by that name. There is no evidence that she knew of the existence of the St. John's Church as a definite or distinct church organization, or knew that it claimed to be anything more than a phase of the work of the Lincoln church. Indeed, it is very apparent that, aside from some of the German-speaking people, who had more accurate knowledge of the nomenclature of the various organizations professing to be followers of Luther, the people of Audubon quite universally applied the name "German Lutheran Church of Audubon" to the appellant organization; and we think it no less certain that the testatrix so understood and applied the name. The facts that, in each of her three wills, covering a long series of years, she provided a bequest for a church of that name, and that, during nearly all this time, the appellant was the only German church organization in town adhering to

the doctrines of Luther, and that the St. John's Church had no organized existence until after the last will was executed, are a sufficient indication that the former is the beneficiary to whom the gift was made.

It is thoroughly well settled that extrinsic evidence is admissible in such cases, showing all the circumstances under which the will was made,—not to make a will for the testatrix, but to identify the party to whom the bequest is made. It is her intention which is to prevail. Now, it is no doubt true, as appellee contends, that the name given the legatee, "The German Lutheran Church of Audubon," is not the official corporate name of the appellant. No more is it the true official corporate name of the appellee; and the right of either to receive the fund depends upon extrinsic evidence which will enable the court to find and identify the party which the testatrix had in mind. *In re Estate of Johnston*, 141 Iowa 109; *Gilmer v. Stone*, 120 U. S. 586; *Preachers' Aid Society v. England*, 106 Ill. 125; *Bristol v. Ontario Orphan Asylum*, 60 Conn. 472; *Woman's Union Missionary Society v. Mead*, 131 Ill. 338; *Skinner v. Harrison Twp.*, 116 Ind. 139; *Smith v. Holden*, 58 Kan. 535; *Missionary Society v. Cadwell*, 69 Ill. App. 280; *Second U. P. Church v. First U. P. Church*, 71 Neb. 563 (99 N. W. 252); *In re Welch's Will*, 78 Vt. 16; *Keith v. Scales*, 124 N. C. 497; *Morse v. Stearns*, 131 Mass. 389; *Tilley v. Ellis*, 119 N. C. 233.

It is argued for the appellee, however, that, the cause having been tried and determined below, the finding there made, identifying the appellee as the intended beneficiary of the will, is to be given the effect of a jury verdict, and that it is not open to review upon this appeal. Assuming, for the purposes of argument, that the proceeding is at law, and that, if there be any substantial dispute upon facts material to the decision of the controversy, the finding of the trial court thereon is, ordinarily, final, it is still true that, if the finding so made is so clearly against the

2. APPEAL AND
ERROR: questions of fact, etc.: identity of legatee.

evidence and so lacking in substantial support that the court would be justified in setting it aside, this court will not hesitate to so hold, upon appeal. We are of the opinion not only that the judgment below is without sufficient support in the evidence, but that, had the issues been tried to a jury, the appellant would have been entitled to a directed verdict. The rule of law in support of which the appellee cites *Christian Church v. Carpenter*, 108 Iowa 647, and others of that nature, to the effect that, where funds or property have been dedicated to the support of a specified religious faith, they cannot by law be diverted from the object or use to which they have been given, is one the soundness of which cannot here be questioned; but the record in this case does not call for its application. The issue here tried is one of identity of the legatee whom the testatrix intended to describe or point out when she provided her gift "to the Board of Trustees of the German Lutheran Church of Audubon," etc., and involves no question of improper diversion of funds or property.

Nor is there any occasion to deny the correctness of appellee's further proposition that, where a bequest or devise is "free from ambiguity, and there is no imperfection or inaccuracy in its language the testator's intent is to be collected from the words used by her, and parol evidence is inadmissible for the purpose of adding to, explaining, or subtracting from it;" but the trouble with the appellee's case is that the bequest which it claims is not free from ambiguity. It makes no gift in clear and express terms which can be held applicable to appellant or to appellee, without the aid of extrinsic evidence. Similarity in names—especially in gifts provided for religious and charitable purposes—is often the cause of confusion and controversy, and it is quite the universal rule to give effect to the testator's intent, as disclosed by extrinsic facts and circumstances, if the record, taken as a whole, makes it fairly ascertainable. The technically correct or official corporate

names of churches, colleges, societies, and charitable organizations very often differ materially from the names by which they are popularly and generally known, and the use by a testator of the popular name of an intended legatee, or of a name by which he himself has known such legatee, instead of the strictly correct designation, is never permitted to defeat or change the intended direction of the gift. *Peckham v. Newton,* 15 R. I. 321 (4 Atl. 758); *Lennig's Estate,* 154 Pa. St. 209 (25 Atl. 1049); *Wood v. Hammond,* 16 R. I. 98 (17 Atl. 324); *Lefevre v. Lefevre,* 59 N. Y. 434.

It is unnecessary to further extend this discussion. The law applicable to the case appears to be well settled, and the appellant's claim to be the intended beneficiary of the legacy in dispute is thoroughly well established. The judgment appealed from is, therefore, reversed and the case remanded for further proceedings in harmony with the views herein expressed.—*Reversed and remanded.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.