BURLINGTON RAILWAY & LIGHT COMPANY et al., Appellants,
v. CITY OF BURLINGTON, Appellee.

**MUNICIPAL CORPORATIONS: Exempting Public Utility from Assessment.** A municipal corporation has no power to relieve a street railway from its statutory duty to construct, reconstruct, and repair the paving or flooring between and adjacent to the rails of its track on public bridges. Irrespective of this holding, ordinances reviewed, and held not to constitute an attempt to grant such exemption.

**MUNICIPAL CORPORATIONS: Equitable Considerations Relieving from Assessment.** The fact that a public utility company had, for 23 years, annually paid an agreed sum into the city bridge fund toward the maintenance of a bridge on which its tracks were laid, presents no equitable considerations for relieving the company of a statutory assessment for flooring the bridge.

**CORPORATIONS: Legislative Control.** The legislature has power to impose on a corporation obligations additional to those imposed upon it at the time of its incorporation.

*Appeal from Des Moines District Court.*—OSCAR HALE,
Judge.

FEBRUARY 16, 1920.

IN the district court, this was an appeal by the plaintiffs
from a special assessment against their street railway for
the reconstruction of the flooring between its rails on Cas-
cade Bridge in the city of Burlington. After trial of the
appeal on the merits, the district court dismissed the same.
From such order, the plaintiffs have appealed.—*Affirmed.*

*Seerley & Clark, Tracy & Tracy, Wilson & Jackson,* and
*M. A. Walsh,* for appellants.

*B. P. Poor,* for appellee.

EVANS, J.—I. The plaintiff Burlington Railway & Light
Company owns and operates a street railway in the city of
Burlington, a city of the first class, under the commission
form of government. It was organized in

1. MUNICIPAL COR-
PORATIONS : ex-
empting public
utility from
assessment.

1895, and became successor to the rights and
liabilities of a successive line of predecessor
corporations. Some ordinances in evidence
refer to some of these predecessors. For
convenience of speech, we shall confine our reference to the
plaintiff alone, and treat it as though it and its predecessors
were one continuing corporation.

The Cascade Bridge is a structure erected by the city
of Burlington, about the year 1896, over a deep ravine. Its
construction was instrumental in connecting the city proper
with a pleasure resort known as Crapo Park. The bridge
is 476 feet long, 30 feet wide, and is suspended 97 feet above
the bottom of the ravine. After its construction, the city
council, by an appropriate ordinance, authorized the plain-
tiff corporation to extend its railway line over it, and to
lay its rails upon it. By an appropriate ordinance in 1919,

the city council ordered and caused to be laid new flooring on such bridge. It also caused a special assessment to be levied against the plaintiff, for the cost of laying such flooring between its rails. The plaintiff denies its liability for such assessment, and the question of such liability is what is involved in this appeal.

The broad defense urged by plaintiff is that, by virtue of the ordinance under which the plaintiff was authorized to extend its railway and to lay its rails upon said bridge, it was provided that the plaintiff should pay "$100 per year for the maintenance and repair of the bridge."

The contention is that this ordinance and the acceptance of its conditions by the plaintiff became, in legal effect, an inviolable grant and contract, and that it is now beyond the power of the city council to impose upon the plaintiff any additional burdens, under the guise of special assessments. A consideration of the defense thus put forth involves the possible consideration of two questions:

(1) Did the city, through its ordinance, purport to enter into such a contract as claimed?

(2) If yea, did it have power to enter into such contract?

If both of these questions must be answered in the affirmative, the plaintiff should prevail. If either must be answered in the negative, the plaintiff must fail.

Section 1 of the ordinance relied upon by plaintiff, and enacted August 5, 1896, was as follows:

"Section 1. That the Burlington Electric Railway Company of Burlington, Iowa, in consideration of their laying a double track street railway on South Main Street in said city from Cedar Street to Moltke Street and extending said double track on South Main Street from its present terminus at Moltke Street to the entrance of Crapo Park, and the equipment and operation of the same in all respects, in conformity with the ordinances of the city of Burlington

adopted January 29, 1890, entitled, 'An Ordinance author-
izing the Union Street Railway Company to construct street
railways in the city of Burlington, Iowa, and operate the
same by electric motive power,' and ordinances amendatory
thereto, are hereby authorized to lay a double track on
South Main Street from Cedar Street to Moltke Street, and
to extend said double track on South Main Street from
Moltke Street to the entrance of Crapo Park, and for that
purpose may use the bridge now being built by the city over
the Cascade ravine on said street and extend their tracks
upon and over said bridge, for which they shall pay to the
city $100.00 per year for the maintenance and repair of the
bridge."

It will be noted that this section incorporated by refer-
ence an existing ordinance, adopted January 29, 1890,
Turning to this incorporated ordinance, Sections 7 and 11
thereof are as follows:

"Sec. 7.   In case said city shall at any time pave or
otherwise improve the surface of any street or part thereof
along which such street railway may run, said company
shall pave or otherwise improve the space between the rails
of its tracks, switches and turnouts so that it shall cor-
respond with the paving or the improvement of the street
outside of the tracks.   Said paving or improvement to be
done under the supervision of the internal improvement com-
mittee and city engineer, and as provided in the ordinance,
'Requiring Street Car companies to Pave or Macadamize,'
adopted July 2, 1888, except that said company shall not be
required to pave outside of its tracks.

"Sec. 11.   The space between the rails on all streets,
whether improved or unimproved, upon which said street
railway is situated, shall be kept in repair and even with the
top of the rails, and if said company shall fail to keep the
space between the rails in good repair and even with the
top of said rails, the said city may make the said repairs and

charge the same to the said company as a special tax to be collected as other special assessments."

It is to be noted also that Section 7, here quoted, incorporates by reference a previous ordinance, adopted July 2, 1888. Of this incorporated ordinance, Section 1 thereof is as follows:

"Section 1. Whenever the city council shall order any street or part of street paved or macadamized upon which street railway company is located, it shall be the duty of such company to pave or macadamize and maintain three and one-half feet in width each way, commencing at the center of the space between the rails, and such paving or macadamizing shall be done in the manner, at the time and like material as required of the owners of the property abutting upon the street or part of street paved or macadamized."

Construing, therefore, the ordinance of 1896 in the light of the incorporated ordinances of 1890 and 1888, we are agreed in the view that it evinced no intention to relieve the street railway company of its obligation, under the pre-existing ordinances, to "pave" or "otherwise improve" the space between its rails, whenever such paving or improvement should be ordered by appropriate action of the city council.

It is argued that the city has fraudulently misappropriated the funds paid by the plaintiff corporation in its annual payments of $100 for 23 years, and that the city should be deemed to hold such funds in trust, and should be required to apply a sufficient amount thereof to the payment of the special assessment of about $1,300.

2. MUNICIPAL CORPORATIONS: equitable considerations relieving from assessment.

We find nothing in the record on which the charge of fraud or misappropriation can be predicated. $100 per year is not such a princely sum, as compared with the current expense of maintaining and repairing so large a structure,

as to become, of itself, a sufficient circumstance to prove fraud or misappropriation.  The evidence in the record discloses that, in the 23 years of use of this bridge, the city has expended more than $19,000 in such maintenance and repairs.  Such expense has been paid out of the bridge fund, into which fund the plaintiff's annual payment has been cast.  We reach the conclusion that no contract of exemption purported to be made.  Nor do we discover any equities which can operate as an estoppel upon the city.

II. Our conclusion reached in the foregoing paragraph is of itself decisive.  Our conclusion upon the second question is as decisive.  The contract contended for by plaintiff was beyond the power of the city council to make.  All power in the city council to grant a franchise in any form is conferred upon it by the legislature.  The power er thus conferred is a limited one.  Section 1619 of the Code of 1897 was as follows:

3. CORPORATIONS: legislative control.

"Sec. 1619.  The articles of incorporation, by-laws, rules and regulations of corporations hereafter organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall at all times be subject to legislative control, and may be at any time altered, abridged or set aside by law, and every franchise obtained, used or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good."

The foregoing was a substantial re-enactment of Section 1090 of the Code of 1873.  The effect of this section was to reserve to the legislature full power of future legislation, which should be obligatory both upon the city and upon the operating corporation.

Section 1056-a44 of the Supplement of 1913 is as follows:

"Sec. 1056-a44.  That in every such city the owner of

any street railway occupying or using any bridge shall construct, reconstruct and repair the paving or flooring on said bridge three and one-half feet each way from the center line of the space between the rails of its tracks, the same to be ordered, done, assessed and paid for in the manner provided for paving in Sections eight hundred thirty-four and eight hundred thirty-five of the Code."

It is clear, therefore, that this statute imposed upon the plaintiff corporation the very obligation which is sought to be enforced by this special assessment. No question of impairment of the obligation of a contract is involved, nor any other constitutional question. If there were, it would be fully answered by Section 12 of Article 8 of the Constitution of Iowa, as follows:

"Sec. 12. Subject to the provisions of this article, the general assembly shall have power to amend or repeal all laws for the organization or creation of corporations, or granting of special or exclusive privileges or immunities, by a vote of two thirds of each branch of the general assembly; and no exclusive privileges, except as in this article provided, shall ever be granted."

It follows that the order of the district court was right, and it is, accordingly,—*Affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.