## CARL S. CARLSON v. DULUTH STREET RAILWAY COMPANY.[1]

June 6, 1930.

No. 27,854.

*G. A. E. Finlayson,* for appellant.
*Leonard McHugh,* for respondent.

TAYLOR, C.

On November 10, 1928, a head-on collision occurred between plaintiff's automobile driven by himself and a street car of defendant on Tower avenue in Superior, Wisconsin. Plaintiff recovered a verdict for damages. Defendant made a motion for judgment notwithstanding the verdict, and, in the event that it should be denied, made a motion for a new trial. The motion for judgment was denied. The motion for a new trial was granted unless plaintiff filed a written consent to reduce the verdict to the sum of $8,800,

[1]Reported in 231 N. W. 246.

in which event the motion for a new trial was denied. Plaintiff filed the written consent. Defendant appealed from the order denying a new trial but not from the entire order.

Tower avenue runs north and south and extends through West Superior to South Superior. Between the built-up portion of West Superior and South Superior there is a paved strip ten feet in width on each side of the street. These paved strips are about 20 feet apart. The space between them is graded and graveled. Double street car tracks have been constructed on that part of the street within the built-up portion of West Superior. From there to South Superior only the track on the west side of the street has been constructed. The west rail of this track is 25 inches from the edge of the pavement on that side of the street. This track is provided with turnouts, and street cars run over it in both directions.

The accident happened about six o'clock in the evening. It was dark, and the headlights were lit on both the automobile and the street car. The street was dry. The automobile, a Chevrolet, had three and one-half inch high pressure tires. Plaintiff says in substance that he was driving south on the pavement on the west side of the street at a rate of 25 or 30 miles an hour; that he overtook a Ford sedan which was traveling at a slow rate; that he swung out onto the street car track to pass it and then saw the lights of the street car about two blocks distant; that on seeing the street car coming toward him he tried to turn back onto the pavement; that the wheels on the right-hand side of his car seemed to be against the west rail of the track in a rut and slid along the rail; that he held the steering wheel in position to turn the car onto the pavement and kept sliding along the rail in the same manner until the collision, a distance of about a block; that he made no attempt to stop or turn to the left; and that the street car did not stop nor apparently slacken speed. On the day following the accident plaintiff's brother-in-law, a witness for plaintiff at the trial, went to the place of the accident and measured the depression along the west rail for a distance of 200 feet north from the place of the accident and found that the depression below the top of the rail varied from one and one-fourth to two and three-fourths inches.

The motorman of the street car says that he was traveling between 10 and 12 miles an hour; that he saw an automobile turn out onto the street car track from behind another automobile; that it was so close that he immediately brought the street car to an emergency stop; that the street car came to a stop and that almost at the same moment the automobile struck it.

Photographs of the automobile show that the vehicles must have collided with great force and that the left front corner of the automobile bore the brunt of the impact. The left front wheel was torn off. The left end of the bumper was driven back over the axle, and the radiator was driven back through the hood and to the right side of the frame. The right front wheel was still in position unbroken. The marks on the street car show that the place of contact was between the headlight in the center and the west side of the car. The effect of the collision on the automobile and the part of the street car with which it came in contact shows that the right front wheel must have been on the west side of the west rail at the moment of collision and could not have been against the east side of that rail at that time.

The city ordinance granting defendant its franchise provides [§ 9] that the company shall "keep the space between the rails in suitable order and repair, in conformity with and as a part of the public highway"; and further provides [§ 10] that "where any team or vehicle shall meet or be overtaken by any car on any of the company's tracks, such team or vehicle shall give way to such car." [Ordinances of the City of Superior, p. 220.]

Plaintiff charges two grounds of negligence: That the motorman failed to keep a proper lookout to avoid colliding with automobiles on the track; and that defendant failed to keep the space between the rails in proper condition.

Taking the motorman's version of what happened there was no negligence in the operation of the street car, and the accident was caused by plaintiff's suddenly swinging onto the track when too near to avoid a collision. Taking plaintiff's version of what happened it is impossible to escape the conclusion that he was guilty

of contributory negligence. After seeing the oncoming street car, he drove for a block or more at the same speed in an ineffective attempt to make his wheels mount the rail. While it seems improbable that a depression varying from one and one-fourth inches to two and three-fourths inches would prevent the wheels from mounting the rail, we take his statement as correct. Yet if he had swung the car a foot or so to the left and then turned it toward the rail at an angle there can be no question but what it would have crossed the rail. Between the tracks and the pavement on the east side of the street there was an unobstructed and unoccupied graded and graveled roadway 13 feet in width upon which plaintiff could have turned at any time, and upon his own statement he had ample time to do so after finding that his wheels were sliding along the west rail. He makes no claim that he could not have turned upon this part of the roadway. Whether we take the statement of the motorman or the statement of plaintiff, the conclusion that plaintiff was guilty of contributory negligence is inescapable. Anderson v. Minneapolis St. Ry. Co. 150 Minn. 509, 185 N. W. 661; Wherry v. D. M. & N. Ry. Co. 64 Minn. 415, 67 N. W. 223; Braaflat v. M. & N. Elev. Co. 90 Minn. 367, 96 N. W. 920; Sikorski v. G. N. Ry. Co. 127 Minn. 110, 149 N. W. 5; Westcott v. C. G. W. R. Co. 157 Minn. 325, 196 N. W. 272; Olin v. Minnesota Transfer Ry. Co. 164 Minn. 512, 205 N. W. 440; Jones v. G. N. Ry. Co. 178 Minn. 322, 227 N. W. 45.

The order appealed from is reversed.