No. 30,185.

JACOB MAY, *Appellee*, v. THE KANSAS POWER AND LIGHT COMPANY, *Appellant*.

(7 P. 2d 108.)

Opinion filed January 30, 1932.

*Thomas F. Doran, Clayton E. Kline, Harry W. Colmery* and *M. F. Cosgrove,* all of Topeka, for the appellant.

*W. E. Atchison, B. J. Lempenau* and *F. L. Loveless,* all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sustained by plaintiff when his Ford touring car and defendant's street car met in a head-on collision.

The accident happened near the loop terminus of the street railway in North Topeka. The railway track thereabout is so near the east curb that it is necessary for northbound motorists to steer their cars toward the left and upon the railway track in order to pass automobiles parked diagonally on the east side of the street.

It appears that on December 29, 1926, about 7 o'clock in the evening, plaintiff was riding northward on Kansas avenue. Two other automobiles were ahead of him. As they approached the place of the accident a car parked diagonally on the east side caused the moving automobiles to veer to the left. Because of these two automobiles ahead of plaintiff he could not see defendant's street car coming southward about 180 feet away. There were ruts about four inches wide and several inches deep which paralleled the rails. The wheels of plaintiff's Ford car dropped into these ruts and he could not steer out of them. After driving ahead in the ruts for some thirty feet he stopped his car. Then seeing that a collision with the street car was inevitable unless it was stopped he started to alight from his car, but before he escaped the collision occurred and he sustained injuries to himself and to his machine. Whatever other details of the accident require to be considered will be set down later in this opinion.

The accident and its consequences became the subject matter of an action between plaintiff and defendant, which apparently failed otherwise than on the merits and was dismissed without prejudice on June 14, 1929. In that action the existence of the ruts in the street which prevented plaintiff from steering his automobile out of the way of the oncoming street car had not been pleaded as a factor in the allegations of negligence of the street-car company. The present action was begun on February 3, 1930. The foregoing facts were elaborated, and defendant's negligence causing the accident was pleaded in various particulars—allegations of the high and dangerous speed of the street car, of violation of the city speed ordinance, failure of motorman to discover plaintiff's automobile held fast in the ruts in time to stop the street car, and negligent

maintenance of ruts in the street alongside the rails in violation of defendant's duty under its city franchise.

Defendant's answer traversed the issues tendered in plaintiff's petition, alleged operation of its street car with due care, and that plaintiff's accident occurred because of his own negligence in operating his automobile; and so far as plaintiff's charge of negligence against defendant was predicated on its permitting the existence of ruts in the street alongside its rails, that feature was barred by the statute of limitations. Plaintiff's motion to strike this last point from defendant's answer was overruled; and in the trial that followed the evidence concerning the ruts was permitted merely to enlighten the jury as to the facts of the accident and not considered as an element of the negligence charged against the defendant.

The jury rendered a verdict for plaintiff in an itemized sum aggregating $5,000, and answered certain questions:

"1. How far was the street car from the plaintiff's automobile when plaintiff turned onto the street-car track? A. 180 feet, approximately.

"2. How far did plaintiff travel on the street-car track before the collision? A. Thirty feet, approximately.

"3. At what rate of speed was plaintiff traveling after he turned on the street-car track until the collision? A. About fifteen miles.

"4. How far did the street car travel after plaintiff turned onto the track before the time of the collision? A. No evidence.

"5. At what rate of speed was street car traveling from the time plaintiff turned onto the track until the time of the collision? A. No evidence.

"6. Did the street car stop before the collision? A. No.

"7. If you answer No. 6 in the negative, state at what rate of speed the street car was traveling at the time the accident occurred. A. About fifteen miles.

"8. Within what distance could the street car of defendant company have been stopped by the motorman, if it was traveling at the rate of speed you have found in the answer to the preceding question? A. About thirty feet.

"9. At what rate of speed was the automobile driven by plaintiff traveling when the accident occurred, if it was moving? A. It was stopped.

"10. Did the plaintiff sound his horn, or give any other warning to the motorman on the street car, or his presence on the track? A. He stopped his car.

"11. Was plaintiff guilty of negligence which caused or contributed to the collision? A. No.

"12. If you find for the plaintiff, state the particular act of negligence on the part of the defendant which you find was the proximate cause of the collision and resulting injuries and damages. A. Failing to stop street car.

"13. Did the left wheels of plaintiff's automobile drop into ruts on the inside of the east rail of the street railway track, after he turned onto the street-car track? A. Yes.

"14. If you answer No. 11 in the affirmative, could plaintiff, after he saw the street car approaching, have turned off the street-car tracks in time to have avoided the collision, had not his wheels been in the rut on the inside of the east rail of the street-railway tracks?  A. Answered in the negative."

Defendant's motion for judgment on the special findings was overruled; likewise its motion for a new trial; and judgment was entered on the general and special verdicts in plaintiff's behalf.

Defendant appeals, assigning various errors, the first of which is based upon its right to judgment on the answers to the special questions.  The jury found that defendant's negligence lay in its failure to stop the street car.  (Finding 12.)  It is argued that a street car has a paramount right over other street traffic in that portion of the street where its tracks are located.  We are asked to conclude from finding No. 3 that plaintiff was traveling at fifteen miles per hour when he turned on the street-car track, and from finding No. 5, which declares there was no evidence as to the street car's speed from the time plaintiff got on the railway track until the time of the collision, that the accident was occasioned by plaintiff's own fault.  Defendant stresses the answer to question No. 14.  But according to our reading of the record there is no answer to question No. 14.  The jury were only asked to answer that question if question No. 11 was answered in the affirmative.  But since it was answered in the negative the jury merely noted that fact and gave it no further attention.  If this apparent interpretation of the jury's entry, "Answered in the negative," which follows question No. 14, is not the correct one, then the question itself was entirely superfluous.  Of course, plaintiff could have turned off the street-car track if his car wheels were not down in the rut and if he had time to do so before the collision.  Plaintiff testified:

"Q. You could have turned after you passed the (parked) car, couldn't you?  A. If it hadn't of been for the rut I could.  . . .

"By the Court: After you passed the car that was parked on the east side of the street and if there hadn't been this rut could you have gotten off the track and avoided the collision?  A. Yes, sir."

The jury did say that there was no evidence to show how far the street car traveled after plaintiff got upon the railway track until the collision (finding 4) and that there was no evidence as to its rate of speed during that interval (finding 5).  In the nature of the case, unless persons had been on hand with stop watches for the very purpose of timing those incidents, there could not be precise findings

on such matters. Defendant's witnesses testified that the street car was moving southward so slowly that it virtually stopped at the point of collision. The motorman testified:

"A. As I came out of the Garfield park loop I noticed an automobile . . . coming north . . . because it was on the track. Of course, I would notice it more directly for that reason and as . . . it didn't turn off the track . . . I slowed down and as it come nearer it didn't get off the track so the time it got there I was nearly stopped still on the track. When the collision happened the street car was, if not stopped, nearly stopped. I wouldn't say it was exactly stopped, but it was nearly stopped."

This court can discern nothing in the answers to these questions to predicate a motion for judgment in defendant's behalf. Moreover, the jury's special finding No. 12 fixes the nature of the negligence on which this judgment rests, so plaintiff's other allegations of negligence and particularly those concerning the speed of the street car are eliminated from this lawsuit.

Defendant lays great significance upon the jury's finding No. 3, and interprets it to mean that plaintiff was traveling in the rut beside the rail at the rate of fifteen miles per hour and that he maintained that speed until the very moment of the collision. Such an interpretation wholly ignores findings 9, 10 and 11. It is the duty of this court, and of the trial court, and indeed it is the duty of counsel, to harmonize these findings where that is possible; and it is quite apparent to us that finding No. 3 does not mean that plaintiff maintained a rate of speed of fifteen miles an hour after his car wheels slipped into the rut right up to the moment of the collision. The plaintiff had testified that when he got into the rut he was traveling at ten or twelve miles an hour; that he drove ahead for a short distance trying to get his wheels out of the rut; then he stopped because he saw the street car coming towards him. Other witnesses estimated his speed at fifteen miles an hour and the jury adopted their opinion; but the jury also adopted as true the plaintiff's testimony that his automobile was at a standstill before the collision. Counsel for defendant contend that the sole question in this case involves the doctrine of "last clear chance." If so, there is no use for further discussion. That doctrine could only apply here if the plaintiff himself had been negligent, that his negligence had ceased, and that defendant thereafter had an opportunity, if diligently exercised, to save plaintiff from the peril his own negligence had gotten him into. (*Jamison v. Atchison, T. & S. F. Rly. Co.,*

122 Kan. 305, 252 Pac. 472; *Dearing v. Wichita Rld. & Light Co.*, 130 Kan. 142, 285 Pac. 621.) Here, however, there was no negligence on the part of plaintiff, and the jury's special findings conclude that phase of this lawsuit.

It is suggested that plaintiff was negligent in driving on to the street-car track without ascertaining that no street car was approaching so closely that it would be dangerous for him to do so. There is a just rule of law to that effect, but it has no application here. This accident did not happen because plaintiff drove upon the street-car tracks within too brief an interval of the approach of the street car. It happened because plaintiff's car was caught and held in the rut beside the rails of the track, and because defendant's motorman did not stop the street car before colliding with plaintiff's automobile—something it would have been very easy to do if the motorman had been attending to his duty and if he told the truth as to the slow speed of the street car at and just preceding the time of the collision.

Counsel cite and quote from *Dearing v. Wichita Rld. & Light Co.*, supra, but we find no such analogy between that case and the one at bar as would warrant comparison or discussion.

The next formal error presented by defendant relates to its motion for a new trial. This is predicated, in part, upon its suggestion of inconsistency in the special findings, but that point has already been discussed, and we must hold without further words that there is no such inconsistency in the special findings, particularly between No. 3 and No. 9, nor between No. 3 and Nos. 11 and 12, nor between No. 5 and No. 7, nor between No. 3 and No. 10, as to justify or require the granting of a new trial.

Defendant complains because of the trial court's refusal to submit to the jury a question which might have elicited a finding of the length of time which elapsed after he stopped his automobile before the collision. The court did submit fourteen questions, thirteen of which were answered. The code does not require that more than ten be submitted at the request of a litigant (R. S. 60-2918), although a larger number may be submitted if the trial court in the exercise of its discretion deems it advisable to do so—the main purpose of such questions being kept in mind. That purpose is to test the jury's general understanding of the issues they have to determine and also to test their sincerity in the performance of their duty.

(*Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 657-659, 253 Pac. 611.) Here the special questions submitted and answered were amply sufficient to show that the jury clearly understood the issues they were called upon to decide, and there is no apparent want of sincerity in their answers.

Fault is also found with the trial court's instructions, particularly as to the significance to be given to the existence of the rut alongside the rail of defendant's track. The court's instructions should be read and construed together, and while they contain the familiar recitals as to what the jury should do if they should find defendant "negligent in one or more of the respects alleged in the petition," yet the court plainly told the jury that the existence of ruts alongside the rails should not be considered as a determinant of negligence. The pertinent instruction reads:

"Evidence has been introduced in this case concerning the existence of certain ruts along beside the rails of defendant's track. You are instructed that this evidence cannot be considered by you upon the question as to whether the defendant was guilty of negligence in this case and such evidence has been received and can be considered only by you upon the question as to whether the plaintiff's automobile stopped upon the tracks and upon the question as to whether he was able to drive his automobile from the track and have avoided the collision." (Instruction 16½.)

This instruction was proper and in line with the theory on which the cause was tried throughout, from the point where plaintiff's motion to strike out the matter in defendant's answer concerning the rut because it was barred as an element of defendant's negligence was ruled on favorably to defendant.

A painstaking study of this record and of the briefs of counsel reveals nothing approaching reversible error, and the judgment is therefore affirmed.