ZIMRI BOWERS, Administrator, Appellee, v. DES MOINES RAILWAY COMPANY, Appellant.

No. 42755.

MARCH 5, 1935.

REHEARING DENIED JUNE 21, 1935.

Corwin R. Bennett, for appellant.

Guy A. Miller and Denmar Miller, for appellee.

PARSONS, J.—The plaintiff in this case is the administrator of the estate of Thomas J. Bowers, deceased. He brings suit for the estate by reason of the death of said Bowers, and against the Des Moines City Railway Company, claiming that the death was caused on the 17th day of January, 1933, at about 8:30 a. m., by the negligence of the defendant in which there was a collision between the car of the defendant and a truck of the deceased. Many grounds of negligence are set out in the amended and substituted petition on which the case was tried. Amongst these grounds of negligence charged were the following: In failing to maintain a proper lookout for the deceased and the truck he was driving; in failing to stop; in failing to slacken the speed of the street car; and in failing to keep the surface of the pavement of its tracks and one foot outside of the outer rim in repair, and in allowing ruts and holes to exist in the pavement, or in failing to reconstruct and repair the paving or floor on the bridge. The answer of the defendant, of course, admitted it was a corporation, and pleaded an ordinance of the city, excusing it from maintenance of the paving, etc., and made a general denial of the allegations of the petition, especially denying it was guilty of any negligence claimed, and that any act or omission charged by the plaintiff as against the defendant as negligence, was the proximate cause of the accident to plaintiff's decedent, and especially denied that the plaintiff's decedent was free from contributory negligence at the time and place. The case was tried to a jury, and when the plaintiff rested the case in chief the defendant made a motion for a directed verdict in its behalf, first, because there was no evidence from which the jury could properly find that the defendant was guilty of any act of negligence charged against it in the amended and substituted petition as amended; second, that there was no evidence that any negligent act of the defendant alleged against it in the pleadings of the plaintiff was the proximate cause of the plaintiff's damage; third, that there was no evidence from which the jury could properly find that the plaintiff's decedent was free from contributory negligence; and fourth, that the evidence shows affirmatively that the plaintiff's decedent was guilty of contributory negligence. This motion was overruled. At the close of all the testimony the motion was renewed and

overruled, the court stating, "I still think it is a jury question, and I overrule it with exceptions." The jury returned a verdict against the defendant, upon which judgment was entered.

The difficult questions in this case arise from the overruling of the defendant's motions for a directed verdict, so it becomes necessary to inquire into the evidence as to whether or not the motion for a directed verdict should have been sustained. It appears without dispute in the case that the things which controlled happened on the Walnut street bridge, upon which plaintiff's intestate had entered just prior to the accident. This bridge is about 504 feet long. It had thereon two sets of street railway tracks, the one on the north side of the bridge for cars going west, and the one on the south side of the bridge for cars going east. On the Walnut street bridge the tracks are about 12 feet and 1 inch apart, that is, from center to center of each track. That would leave about 7 feet and 5 inches between the inside gauge lines of the two tracks. The plaintiff's decedent approached the bridge from the east driving a model T truck, about 8:30 in the morning. The east end of the north side of the bridge was barricaded by reason of some work or repairs being made, so the deceased drove his truck onto the bridge, passing to the left of the barricade, driving to the west, and then turned north going onto the north side of the bridge. He proceeded across the bridge until he had reached a point well in the western half. His car shimmied more or less. He was seen to stand up beside the driving wheel, while driving. He traveled on west, and in the meantime the street car of the defendant had come onto the south half of the bridge, that is, on the south tracks, and was proceeding eastward, so there would be a distance of some several feet between the path of the street car and the truck.

J. B. Martin, a witness for the plaintiff, testified that he saw the truck approaching from the east quite a way before the collision occurred.

"The front wheels were right on the rails. There was a depression of possibly three or four inches. The front wheels were in that depression, I think the hind ones were too. The driver of the truck was trying to turn the wheels both ways, but it seems as though he could only get it up against the curb and it would stop, and he would try the other way. He continued to do that until the time the truck jumped out of the hole. I should say the street car was then not over four or five or six feet away when the truck jumped

out of that hole and the street car and truck came together. The truck went right over toward the street car, went on the south side of the track. The street car and truck came together on the northeast corner of the street car."

This witness says:

"I saw the truck approaching from the east, also the street car coming from the west. I thought the street car was picking up speed. I saw the motorman; I thought he was looking back into the car: he was standing up with his back to the north. I couldn't say that he slackened the speed of his street car before the collision, but just about the time the truck left the gutter I think he seen it and then he did everything he could to stop the car." On cross-examination he said: "I didn't notice the truck driver trying to turn his wheels until he got within about twenty feet of the street car."

Mr. Kanan, a witness for defendant, was on the bridge when the collision took place. When he first saw the truck it was about 40 feet from the street car. It was just across the rail from the outside of the track going west. He saw it turn to the southwest. When the truck turned toward the southwest the street car and truck were approximately 20 feet apart. He saw the collision; the truck collided with the northeast corner of the street car, and when the street car stopped the truck was approximately 7 feet behind the front door of the street car. When he first saw it, it was 40 feet approximately from the street car, and when he looked again it was about 20 feet therefrom. When he first saw the truck it ran straight ahead and appeared to be going all right. The truck did not seem to slacken speed, not even before it struck the front end of the street car. He heard the screech of the brakes on the street car just before the vehicles collided. He said he did not know how far because he was interested in watching the truck, and that the street car did not seem to push the truck to the east at all, it just seemed like it flew around the end of the street car; that he imagined it pushed the car two or three feet, and the truck was six or seven feet west of the front of the street car when they both stopped, and the accident happened about 100 feet from the west end of the bridge.

The operator of the street car testified that the accident occurred about 7:40 a. m. That he had stopped at West Second and Walnut streets to throw a switch; that he was going about 18 or 20 miles

an hour, looking straight ahead, and did not at any time between that point and where the collision occurred look back. That the collision took place about 100 feet from the west end of the bridge. When he first saw the truck it was about 40 feet away, and on the north side of the in-bound track coming west. He thought the truck was going about 30 to 35 miles an hour when he first saw it. That when the two vehicles were about 20 feet apart the truck came toward the street car headed southwest, and the front end of the truck collided with the front end of the street car. That he started to stop just as soon as he saw the truck start toward him, and before that he had not seen anything unusual in the motion of the truck, and that the street car ran about 20 feet after he first began making a stop. The car ran about 8 feet after the first part of the collision. The truck flopped around the car. He said he never saw the truck traveling in any rut or holes. There was nothing there to indicate the car was out of control. He did not see the wheels of the truck in motion before he saw the truck start over towards him, and said that the pavement in the vicinity was reasonably good on the west end of the bridge, and that it was not so good on the east end.

Such is the material testimony dealing with the movements of the truck and street car just prior to the accident. On this record the question arises as to whether or not the motion by plaintiff for an instructed verdict should not have been sustained. The first question which arises is: Was the deceased guilty of negligence as a matter of law? In Abraham v. Sioux City, 218 Iowa 1068, 250 N. W. 461, the plaintiff sued the city for an injury when the owner of a truck and his driver drove up a street and hit a limb projecting over the street, in plain view, injuring the owner, and he was held as a matter of law guilty of negligence. The court said:

"There can be no recovery for an injury due solely to a failure to observe an obstruction in a public street, which is in no way concealed and which is obvious and plain to any one who will look"—citing authorities. And the court further said: "The burden is on the plaintiff in cases of this kind to show affirmatively freedom from contributory negligence."

In the case at bar the deceased drove along the north side of the bridge. His car was about on the north tracks. The condition of the street was plainly observable to him, but he proceeded ahead. He was in a place of safety while continuing so to drive, so far as

the street car was concerned. He could see the street car, but when within about 20 feet of the street car he suddenly veered his course to the southwest and struck the car. He could have avoided this by stopping his truck instead of turning to the southwest. He knew the condition of the street because he could see it. He voluntarily drove himself into a place of danger suddenly, and when within 20 feet of the street car he attempted to turn off, and thereby the collision occurred. It would not have occurred but for the action of the deceased.

In Sandell v. Des Moines City R. Co., 184 Iowa 525, 168 N. W. 226, where the plaintiff sued for an injury suffered by being hit by the street car, it was held that if a lookout had been maintained by the street car operator it would not, because of plaintiff's negligence, have avoided the injury. That the failure to maintain a lookout was not the proximate cause of the injury suffered when hit by the car, when if such lookout had been maintained it would not, because of plaintiff's negligence, have avoided the injury, and it was further held that negligence may not be predicated on the absence of warning signals of the presence and movements of that which ultimately caused the danger, e. g., a street car, when at a time there was no danger. The injured party had ample knowledge of the presence of such thing and of what it was then doing, and what it was liable to do in the immediate future. This was a case where there was an injury to a horse driven along the streets. The court said, at page 528 of 184 Iowa, 168 N. W. 226:

"We are unable to see how failure to look ahead on the track can be deemed the proximate cause of the collision. Though the eyes of the motorman were on the track ahead every instant, it would not avoid the collision if no sign of the possibility of collision could be seen. If there be negligence, it is not failure to maintain an advance lookout, but failure to act properly on something that could be seen. If negligence of plaintiff made useless the most careful watching of the track ahead, failure to watch has no causative relation to the injury suffered."

Applying the reasoning of that case to the case at bar, the deceased was in a place of safety until he came to within about 20 feet of the street car. He suddenly and without warning left that place of safety, drove to the southwest, struck the street car, and the injury took place. The operator of the street car saw him; saw

him make the turn. It was too late to stop the street car,—it could not leave its tracks. The deceased turned and started toward the street car and it was then too late. He struck the street car at the northeast corner, which would be the north front corner of the street car. He was bound to strike the street car if he proceeded in that course, even had the street car stopped. There was no showing it could have stopped within the distance it had to travel. It was further said in the opinion just cited:

"But if we assume there *was* a conflict on whether such warning was given, and that, ordinarily, there is a duty to give it, it still remains true that there is no duty to warn of that which is already known." See page 532, division 3-a, of the opinion in 184 Iowa, 168 N. W. 226. And further:

"If the plaintiff knew all of which a warning could have informed her, she may not complain that none was given."

So the deceased in the case at bar knew all that a warning could have given, but he left his course of travel, drove directly into the street car, and it was leaving his course of travel that precipitated the collision.

In Rolfs v. Mullins, 179 Iowa 1223, at page 1228, 162 N. W. 783, a case in which a foot passenger was injured by an automobile, the court said:

"The relative rights of vehicles and pedestrians in the public streets are equal—one has no rights superior to the other, save as declared by statute or ordinance, and each is obliged to act with due regard to the movements of others entitled to be on the street. Neither is called upon to anticipate negligence on the part of the other. It is no more the duty of the driver of vehicles to continually look out for pedestrians than of the latter to look out for vehicles. No pedestrian has a right to pass over a public thoroughfare without regard to approaching vehicles."

In the case at bar the rights of the deceased and the street car were equal. Each was required to act with due regard to the movements of the other. It was no more the duty of the operator of the street car to continually look out for automobiles or trucks than of the latter to look out for the street car. In the cited case there was an ordinance stating: "Pedestrians are hereby given the right

of way over crossings at street intersections." The court in speaking of that says, at the bottom of page 1229:

"It means no more than 'that, when two or more persons moving in different directions approach a crossing at the same time, or in such manner that, if both or all continue their respective courses, there is danger of collision, then the one having the preference is entitled to the first use of such crossing and it is the duty of others to give him reasonable opportunity to do so.' "

In the case at bar no ordinance or statute gave the deceased any more rights upon the street than the street car had, and even if it did it in no way impaired the duty of the deceased to exercise ordinary care to avoid collision with the street car, and even where he is given the preference, if there is danger of a collision, then the one having the preference only is the one entitled to its use. But in this case there was no preference.

These cases fully support the rule that where no danger was to be anticipated by the operator of the street car from the truck, or to the truck, until it left its course of travel and started toward the street car, the car had the right to continue on its course. The duty of looking out for it, that is, trying to avoid an injury to it, did not arise so long as the street car was proceeding on its track, until it was evident there was some danger of a collision. So until the deceased left the place of safety he was in, came southwest across towards the street car, there was no apparent danger of collision, and that. being so close to the street car, it was impossible for the operator of the street car to avoid the collision.

We have examined carefully the cases cited by the appellee under the heading, "There Was Sufficient Evidence of Negligence of the Defendant to Go to the Jury", and see nothing in these cases that in any way conflicts with the proposition just stated. The first case was McClosky v. Iowa Ry. & Lt. Co., 198 Iowa 1146, 197 N. W. 989, 200 N. W. 913. That case turned on the proposition that it presented a jury question as to whether it was possible for the operator to stop the street car after he saw the traveler was on the track and in danger of being hit by the car. The view of the motorman was admittedly unobstructed. He saw the automobile that was struck at the time the car was 50 feet from the crossing, and there was testimony that the street car was several hundred feet away at that time, and it was said, "There would seem to be no reason why

it should not have been brought to a stop in time to have avoided the accident."

Section 489 of 60 C. J., p. 613, is cited. We do not see how the appellee can stand on this case for it reads:

"Except where the evidence is undisputed and such that but one conclusion can be reasonably drawn therefrom, it is for the jury to determine whether or not a street railway company was guilty of negligence in failing to maintain its track or the street in proper and safe condition, or permitting a defect therein, or obstruction thereof, or any improper constructing or maintaining of a trolley wire, pole, or other structure in an action for injuries resulting therefrom."

Whatever the conditions of that street, the deceased knew it when he drove on the bridge. He had notice of the barricade on the east end, that it was put there for a purpose, either to warn travelers not to undertake to go upon the north part of the street or that it was under repair, or something of that sort. Knowing these things, he proceeded.

In Watson v. Boone Electric Co., 163 Iowa 316, 144 N. W. 350, the evidence supported the finding that the car was being allowed to coast down a sharp grade through the darkness at a high rate of speed and along a street which the public had a right to travel, and was not under such control that it could be stopped with reasonable quickness upon discovering the peril of the plaintiff. This was held to be sufficient evidence to take the case to the jury on the negligence of the street railway defendant.

Burlington Ry. & Light Co. v. City of Burlington, 188 Iowa 272, 176 N. W. 285, does not bear upon the question at all. It was a procedure over a special assessment against a street railway and discusses none of the questions involved herein, and is not in point with the case at bar.

Bruhn v. Ft. Dodge Street R. Co., 195 Iowa 454, 192 N. W. 296, in so far as this question is concerned, simply holds that the operator of the street car is not negligent because he does not, before starting the car in the usual manner, anticipate the possibility that some trespasser may have secreted himself in some unusually dangerous and not to be apprehended place about the car, and says, speaking of the duty of the operator of the car: "He would be chargeable with the duty of discovery of whatever such lookout

would disclose. In the absence of any circumstance suggesting the necessity of special inquiry or investigation, he was not chargeable with other discovery than a faithful lookout would disclose." We cannot see where this case in any way sustains the appellee's position.

Borg v. Des Moines City Ry. Co., 190 Iowa 909, 181 N. W. 10, was a case of a guest riding in an automobile and injured by a collision with a street car. It was claimed by the plaintiff that the street car operator did not keep reasonable or proper lookout for traffic on the south side of the street; did not give any warning or signal of its purpose to start the car down the switch, when they knew, or with proper lookout should have known that, unless they kept the street car under proper control, they were liable to collide with the Ford (the car in which plaintiff was riding), and further charged that, as the street car was turned in upon the switch the headlight of the car cast a glare in the faces of the party in the Ford; that it upset the Ford and seriously injured the plaintiff. The opinion says these allegations are sustained by the testimony of the plaintiff and her two companions. Plaintiff was an invited guest in the Ford, and even if the driver were negligent in its management, no facts were shown to justify the court to impute his negligence to the plaintiff, as a matter of law. The motion was made by defendant at the close of the testimony, which was sustained, that there was no evidence of negligence on the defendant's part; that she and her brother were engaged in a joint enterprise and his negligence was imputable to her, and that the plaintiff had not shown herself free from contributory negligence. The court said the plaintiff and her companions were not trespassers in the street any more than the street car. The only superior right which the defendant could lawfully assert was the right of precedence in the movement of its car upon the track laid for its use; but this right of precedence affords no justification or defense for driving a car into collision with another vehicle, if, by reasonable care and watchfulness the accident may be avoided.

In Mangan v. Des Moines City R. Co., 200 Iowa 597, 203 N. W. 705, 41 A. L. R. 368, there was a directed verdict for the defendant, and plaintiff appealed. The petition alleged the maintenance by defendant at the place of the accident of a so-called "safety zone" which was in fact not a safety zone, but which, by the nature of its construction, misled the plaintiff and caused her to believe that

the area of such zone in which she stood was a safe place in which to stand to permit the passing of the defendant's street car; (2) the failure on the part of the operator of the street car to give warning to the plaintiff that the spot where she was standing was an unsafe place to stand, by reason of the fact that the street car, operated at such time and place, in rounding the curve would swing out and over the spot; and (3) the failure of the motorman to stop the street car after the position of. danger of plaintiff became known to him. The accident occurred at Second and Locust streets in the city of Des Moines, Iowa, and was caused by the rear end of the street car striking the plaintiff as the car rounded a curve at said intersection. The plaintiff stopped on what is known as a safety zone and remained standing there until the rear end of the car struck her as it swung out in rounding the curve. At the point of intersection it is shown a street car could be operated on a straight-ahead track, as well as around the curve. Both of these. tracks were visible. Plaintiff did not know that the car in question intended to round the curve. The opinion says:

"The defendant initiated and maintained this zone, and its agent had supervised its location. The defendant railway company created the situation, so far as the safety zone is concerned. It will be presumed that the defendant knew that a person occupying the particular spot which the plaintiff occupied, would be in danger of being injured by the overswing of a car rounding this particular curve."

Remillard v. Sioux City Traction Co., 138 Iowa 565, 115 N. W. 900, is a case in which the defendant street railway company was the appellant. The city railway tracks were near a railroad. At the time of the accident a freight train was moving in the same direction as the street car, but at about half the speed of the car. The court said:

"The motion of the train, together with the accompanying noise, was likely to divert a pedestrian's attention, and, in view of this, it cannot be said as a matter of law that deceased was negligent in not observing the approach of the street car." It further said: "Moreover, if the collision occurred at the crossing, there was no direct evidence thereof and the instinct of self-preservation furnished sufficient basis for a finding of want of contributory negligence."

Here in the case at bar the accident was seen by at least two persons, so the question of instinct of self-preservation does not come in.

In Welsh v. Tri-City Ry. Co., 148 Iowa 200, 126 N. W. 1118, the motorman was held negligent in failing to exercise reasonable care to discover plaintiff's peril and to avoid an injury when it was reasonably apparent that plaintiff was in danger, or was going into a place of danger, and said, in other words, the sole question submitted to the jury was the one involving the application of the doctrine of the last clear chance, and that the case was submitted to the jury on the theory that if the motorman saw or in the exercise of reasonable care might have seen the plaintiff was in danger of the approaching car, or was putting himself in the position of danger of the car, without noticing its approach, and while he might in the exercise of reasonable care have stopped the car before injuring plaintiff, then the defendant was liable, notwithstanding the negligence of the plaintiff in putting himself in such a position of danger, and the court said: "The evidence justified the submission of the case on that theory." In this case there was no way in which the operator of the street car could have avoided the collision after the deceased turned to the southwest, hence the situation is not in point here.

Engvall v. Des Moines City R. Co., 145 Iowa 560, 121 N. W. 12, simply held that the motorman did not heed the gong of the hose wagon as he approached the crossing at which place the accident occurred, and was negligent in not hearing or seeing, in time to avoid the accident, the hose wagon of the fire department. So in none of these cases do we see anything that assists the appellee in the assertion that "the evidence of negligence was sufficient to take the case to the jury."

We have examined carefully all the cases cited by the appellee under the head of "Deceased was not guilty of Contributory Negligence" as a matter of law, and find in none of these cases any situation such as would be controlling in this case on that proposition. However, we do find in Phelan v. Foutz, 200 Iowa 267, 204 N. W. 240, the following principle reaffirmed, that the last clear chance doctrine has no applicability until the party who is accused of coming within the doctrine actually discovers the danger to the other party. There is no showing in this case that the motorman in the instant case could have discovered that the deceased was in any

peril from the operation of the car until he went within about 20 feet of the street car, turned, and ran into it. We do not discuss or decide other errors alleged, for the reason that the conclusions herein reached dispose of the case, hence, as the reasons given require a reversal of the case, it is hereby reversed and remanded.

ANDERSON, C. J., and ALBERT, DONEGAN, RICHARDS, and KINT-ZINGER, JJ., concur.