VIRGIL B. GEERS, Appellee, v. DES MOINES RAILWAY COMPANY, Appellant.

No. 47429.

(Reported in 38 N. W. 2d 89).

JUNE 14, 1949.

Corwin R. Bennett and Dale S. Missildine, both of Des Moines, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee.

SMITH, J.—The only questions on this appeal concern the claimed insufficiency of the evidence of defendant's alleged negligence and of plaintiff's freedom from contributory negligence. They were raised by appropriate motions which were overruled.

The collision occurred the evening of November 13, 1947, on East Fourteenth Street in Des Moines, a short distance south of its intersection with Mattern Avenue. Plaintiff was driving north, defendant's streetcar was southbound. It was about seven o'clock. The headlights on both vehicles were lit and lights inside streetcar were on.

Defendant's carline along East Fourteenth Street was composed of a single track in the approximate middle of the street, except for occasional double track passing places at which the streetcars would of course turn to the right. The collision occurred at or near the south end of one of these passing places. The evidence is in some conflict as to whether the streetcar had cleared the switch and was back on the single track headed straight south or was still in the act of leaving the switch and was pointed somewhat southeast.

Plaintiff had driven from Quincy, Illinois, that day, most of the way at the wheel himself. His sole companion was Mrs. Schachtsick. They were coming to visit plaintiff's brother and had only been in Des Moines once before—in September, two

months earlier, when he purchased the car, a used Buick convertible.

The collision was not exactly head-on. One witness says "the left front corner of the streetcar collided with the left front side of the automobile near the left front wheel." Plaintiff was driving with his left wheels just inside or west of the east rail. There was testimony that just south of the switch the pavement bricks along the track were very rough, some on end and some completely gone; that there was a depression between the east rail and the bricks on the inside of the tracks, just on the west side of the east rail; that the bricks were gone "for quite a distance or several feet * * * 8 or 10 feet maybe, the bricks were sunken and some were out so it left a shallow place sort of like a ditch on the west side of the east rail." The depression is also described in the record as extending 10 or 12 feet and there is testimony that extending for about a block south of the scene of the accident there were places where "the track was higher than the level of the pavement, and in other places lower than that level."

The witness who gave the above-quoted testimony (Mr. Rummans) lives on the east side of the street opposite the place he describes. He was an eyewitness of the collision and gives quite a definite description of it:

"I saw the streetcar approaching from the north on the west side of the street on the west passing track. I saw the automobile approaching from the south. * * * I would say the streetcar was traveling at a speed of 15 miles an hour. It didn't seem to decrease its speed before the collision. The lights of the automobile were on. I did not hear any bell or signal sounded on the streetcar. I would say the automobile was traveling between 20 and 25 miles an hour before the accident, with the left wheels just west of the east rail of the car track. The impact occurred just south of the switch and right at the depression I have described. Just before the impact the front wheels of the automobile turned toward the curb to the east. The automobile did not follow the direction of the wheels. The left front wheels skidded in the car track along the groove, which is the depression I have described. The front wheels turned toward the curb, and the left front wheels skidded along the car tracks for several feet. The collision

occurred after I observed the sliding. They collided just south of the switch. That is the rear of the streetcar wasn't clear of the switch yet. I would say the rear trucks were still north of the south end of the switch when the impact occurred. As the automobile approached I could not see what the driver was doing in the automobile."

The same witness also says on cross-examination: "The last I saw the automobile before the accident it was still skidding in the track."

Both plaintiff and his companion were injured and rendered unconscious in the collision. They testified they were unable to remember much of anything after entering East Fourteenth Street from the east on University. Plaintiff says he was unconscious from the time of the collision (Thursday) until the following Wednesday. The undisputed testimony shows his injuries were terribly serious.

It is necessary to detail only enough of the evidence to show that there was sufficient to create a jury question as to both defendant's negligence and plaintiff's freedom from contributory negligence, upon which issues plaintiff had the burden of proof. We have no hesitation in our approval of the trial court's rulings on defendant's motions.

I. The specifications of negligence ultimately relied on and submitted were: 1. Dangerous speed of streetcar in view of the "alignment of the switch" and condition of the track; 2. failure to keep proper lookout ahead; 3. failure to have proper control in view of the "alignment and contour of the track and the surface and grade of the street"; 4. changing direction of streetcar in nighttime without warning by bell or otherwise; 5. last clear chance; and 6. failure to repair and maintain right of way as required by section 391.77, Code of 1946.

Defendant argues there was no evidence of negligence in any of the respects alleged and that the negligence, if any, "had ceased to operate at the time of the collision, and was not, therefore, the proximate cause of plaintiff's injury."

We have set out enough of the evidence to show the jury could find defendant's motorman was driving through the passing

place at 15 miles per hour. Another witness said "he was going pretty fast"—approximately 20 miles per hour; another said 15 to 18 miles per hour and immediately before the accident 13 to 15. Another eyewitness (Mrs. Rummans) says the streetcar was "swinging back and forth as it came down the street." She adds: "The only thing that I could say as to the speed was that as it approached us the frame of the car was rocking from one side to the other at a swift rate of speed. That I do know, because I saw it." A passenger describes how the streetcar was delayed some distance back and the motorman said "Now, I am late."

 Mr. and Mrs. Rummans, from whose testimony we have quoted, were sitting in their car in their driveway almost directly opposite the scene of the collision, waiting to drive out on East Fourteenth Street. Of course the motorman (and perhaps others) testify differently as to speed but we are concerned here with the testimony most favorable to plaintiff. It was for the jury to determine the actual speed and whether, under the conditions shown, it constituted negligence.

Similarly, on the questions of lookout and control, it was for the jury to appraise the facts shown in the record and to determine whether the conduct of defendant's employee in charge of the car measured up to the standard of reasonable care. That could not, under the evidence, be determined as a matter of law.

 The fact that the streetcar had to change its direction in order to leave the west passing track and get back on the single track as it went south is self-evident. The testimony as to the dangerous condition of the pavement just west of the east rail and south of the switch was sufficient to go to the jury and the issue of last clear chance was likewise determinable only as a question of fact to be answered by a consideration of facts and conditions concerning which there was conflict in testimony and conclusions to be drawn.

But defendant argues strenuously that defendant's negligence, if any, was not the proximate cause of plaintiff's injury. Various cases are cited in support of this contention. The argument is in effect that whether the streetcar was moving fast or standing still, whether it was or was not under control, and whether the motorman was or was not keeping a proper lookout,

the collision was inevitable since plaintiff's auto maintained its northerly course straddling the east rail of defendant's track; that there was nothing the motorman could have done to avert disaster.

The problem is not so simple. The jury could have found plaintiff's failure to turn out was due to the defective condition of the pavement just inside defendant's east rail and his inability to extricate himself from the situation; that the approach of plaintiff was apparent when the streetcar was still on the west passing track and not in plaintiff's path; and that the collision was due, not to the streetcar's inability to turn out, but to its turn into the path of plaintiff's auto which could have been avoided by stopping in sufficient time to have allowed plaintiff to pass safely.

 That condition of the pavement becomes important. Whether the motorman knew of it the defendant is presumed to have known of it and was responsible for it. Section 391.77, Iowa Code, 1946. That condition, if found by the jury to exist, created a trap, a hazard, to an auto approaching from the south. Whether it caused this collision was a question of fact for the jury and not the court to decide.

The cases cited by the defendant do not avail it. In Sandell v. Des Moines City Railway Co., 184 Iowa 525, 168 N.W. 226, the plaintiff, without signal, turned left in front of the streetcar. We held no exercise of ordinary care would have avoided the collision. In Bowers v. Des Moines Railway Co., 219 Iowa 944, 259 N.W. 244, the accident was likewise due to a circumstance that could not have been foreseen or guarded against by any exercise of ordinary care. Other cases, cited from other jurisdictions, may be similarly distinguished from the facts here.

It is argued the motorman owed no duty to plaintiff to check the speed of the streetcar "or do anything to avoid the accident, until the danger of collision became apparent to him as a reasonable and prudent person under the circumstances."

But who shall say, under this record, *when* the danger became apparent? The danger was seen by witness Rummans who was certainly in no better position to see than was the motorman. Mr. Rummans saw the danger plaintiff was in just before the impact. He says on cross-examination: "I would say I saw this

tire skidding in the depression for a distance very near the length of the depression, or 8 or 10 feet." He also says the north end of that depression was perhaps 15 or 20 feet south of the switch. We have no purpose or province here to argue the niceties of calculation as to speed and distance which might be argued to and considered by the jury. We only suggest enough to demonstrate that a question of fact and not of law was presented. The motorman denies he was going 15 miles per hour but estimates that if he had been he could have stopped in 20 feet, "maybe less." He says his car went about 4 or 5 feet after he applied the brake and that the auto was then 30 or 40 feet south and that the streetcar was stopped completely at the time the crash occurred. Manifestly there is no such mathematical certainty presented by the record as to create a question of law.

II. Much of what we have said is pertinent on the issue of contributory negligence. The case may perhaps be said to be closer on that issue, because of the burden plaintiff must bear of showing his own *freedom* from negligence contributing to the disaster.

However, his relation to the situation on that unfortunate evening was materially different from defendant's. By the undisputed evidence he was ignorant of the paving conditions which rendered the situation perilous. The testimony we have referred to tends to show he was trying to extricate himself from the trap into which he found himself. The witness says the wheels of his auto were "turned toward the curb to the east" but the car "did not follow the direction of the wheels. The left front wheels skidded in the car track along the groove." The streetcar was not at first directly in his path. Whether he knew or should have anticipated that it would swing over in front of him surely cannot be said as a matter of law.

The speed at which plaintiff was driving was variously estimated by the witnesses. Some put it as low as between 20 and 25 miles per hour. One puts it as high as 40 to 45 miles. The motorman says between 45 and 50.

It is trite to say that precedents are of little assistance on questions of the sufficiency of evidence. Defendant cites one Iowa case, Bowers v. Des Moines Railway Co., supra. In that case

plaintiff, driving west on the north side of defendant's double track, met defendant's streetcar coming from the west on the south track. In trying to get his wheels out of a rut he drove his auto over to the left in front of the streetcar.

The difference between that and the instant case is clear. There plaintiff turned in front of the streetcar from a place of safety; here the streetcar swung over in front of or into plaintiff's auto. There it was the change in position of plaintiff's vehicle that made collision possible; here it was the change in direction of the streetcar.

Carlson v. Duluth Street Ry. Co., 180 Minn. 505, 231 N. W. 246, also cited, is somewhat more in point but easily distinguishable from the situation here. Plaintiff swung over onto defendant's single track, in order to pass another vehicle going the same direction as he was going and met defendant's streetcar. A reading of the opinion will reveal a materially different situation from the one shown here.

Taylor v. Pacific Electric Ry. Co., 6 Cal. App. 2d 531, 533, 44 P. 2d 680, 681, is also cited. The facts are not set out sufficiently to permit comparison with the facts here. However, the opinion states:

"There is no evidence that the decedent was in a situation of danger from which he could not escape by the exercise of ordinary care. Assuming that the decedent was in such dangerous situation, there was no evidence that the defendant motorman was aware of his dangerous situation under such circumstances that he realized or ought to have realized decedent's inability to escape therefrom."

We think there was evidence here on both those points sufficient to go to the jury. The citation of those cases illustrates the difficulty of using precedents in a case of this kind. However there is a pertinent statement in Ireland v. Connecticut Co., 111 Conn. 521, 525, 150 A. 520, 522:

"As regards the conduct of the deceased, the jury might reasonably have found that the condition of the pavement was such as naturally to lead him to drive with his left wheels on the

track until he came sufficiently near to the trolley car so that in the exercise of reasonable care he was required to turn out, that he did start to turn from the track in time to avoid the trolley, that had his wheels not slid along the rails, he would have escaped the collision, and that there was nothing in the evidence to charge him with knowledge that this was likely to occur to the extent that it did. A finding that the deceased was not guilty of contributory negligence was within the province of the jury."

Other cases cited by plaintiff which seem to sustain the action of the trial court on one or both assignments of error are: Murray v. Kansas City Public Service Co. (Mo.), 61 S.W. 2d 334; Willhauck v. Chicago, R. I. & P. Ry. Co., 332 Mo. 1165, 61 S. W. 2d 336; Cascambas v. Swan, 44 R. I. 364, 117 A. 431; Elkins v. Minneapolis Street Ry. Co., 199 Minn. 63, 270 N. W. 914; May v. Kansas Power & Light Co., 134 Kan. 470, 7 P. 2d 108; Gearhart v. Columbus Railway Power & Light Co., 65 Ohio App. 225, 29 N.E. 2d 621.

In Houston Electric Co. v. Schmidt, 244 S.W. 1110, the Court of Civil Appeals of Texas (9th Dist.), under somewhat analogous facts, held plaintiff guilty of contributory negligence but affirmed a judgment against defendant under the "humanitarian" or last-clear-chance doctrine. If the jury here found plaintiff free from contributory negligence that doctrine did not apply. It was pleaded and presumably submitted by appropriate instruction since no assignment of error is predicated thereon. We have no occasion to discuss it in view of what we have already said.

No doubt there is much testimony we have not mentioned but which was submitted to the jury. We have tried, within reason, to limit our statement of the record to the evidence favorable to plaintiff on the two issues presented on appeal. Believing as we do that there was sufficient to carry both to the jury the judgment is affirmed.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.